UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION

| | |
|---|---|
| PATRICK BURSEY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CUSHMAN & WAKEFIELD, INC., and CUSHMAN & WAKEFIELD OF COLORADO, INC.,<br><br>Defendants. | Civil Action No. 1:19-cv-2344-MEH |

**DEFENDANTS CUSHMAN & WAKEFIELD, INC. AND CUSHMAN & WAKEFIELD OF COLORADO, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Cushman & Wakefield, Inc. and Cushman & Wakefield of Colorado, Inc. (together, "Cushman"),[1] pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby move for the entry of partial summary judgment against plaintiff Patrick Bursey ("Plaintiff" or "Bursey") on Counts III and IV of his complaint (the "Complaint"), both of which are based on alleged violations of Colorado law.  This putative class and collective action includes both federal and Colorado state claims, but for purposes of the instant motion (the "Motion"), only the Colorado state claims are at issue.

Cushman is cognizant of the Court's April 1, 2020 minute order indicating that it intends to proceed first with resolution of Plaintiff's FLSA claims.  However, as described herein,

---

[1] Cushman & Wakefield, Inc. and Cushman & Wakefield of Colorado, Inc. are separate but related corporate entities.  Plaintiff Patrick Bursey was employed by Cushman & Wakefield of Colorado, Inc., a subsidiary of Cushman & Wakefield, Inc.

1

Cushman is confident that the issue as to whether *as a matter of law* Plaintiff is able to maintain cognizable state law claims can and should be addressed by the Court at this early stage in the litigation. As outlined more fully below, the Court's consideration of this legal issue, *which does not require the parties to engage in discovery,* will expedite and streamline the issues before this Court.[2]

## I.     INTRODUCTION

Cushman provides its clients with, among other things, valuation and advisory ("V&A") consultative services relating to commercial property. Specifically, Cushman's V&A professionals perform detailed property and market analyses to assess commercial property values, make recommendations to clients, and assist clients in many other ways. Bursey – an Appraiser who worked for Cushman for approximately one year – alleges on behalf of himself and all current and former Appraisers employed by Cushman in Colorado that Cushman violated the Colorado Wage Claim Act, COLO. REV. STAT. §§ 8-4-101 *et seq*. (the "Wage Claim Act") and the Colorado Minimum Wage Act, COLO. REV. STAT. §§ 8-6-101 *et seq*. (the "Minimum Wage Act").[3] Bursey alleges Cushman violated these statutes by failing to pay overtime and failing to pay the statutorily prescribed minimum wage "free and clear" of any deductions.

Plaintiff's claims under Colorado state law fail as a matter of law because the Wage Claim Act and the Minimum Wage Act, both of which are implemented by the Colorado Minimum Wage

---

[2] Cushman's present Motion for Partial Summary Judgment has no impact on the framework outlined separately in the parties' Proposed Scheduling Order filed on April 17, 2020.

[3] Bursey alleges that Cushman violated "the Colorado Minimum Wage Act, *see* COLO. REV. STAT. §§ 8-4-101 *et seq*." Compl. ¶¶ 97, 102. However, the Wage Claim Act – not the Minimum Wage Act – is codified at COLO. REV. STAT. §§ 8-4-101 *et seq*. The Minimum Wage Act is codified at COLO. REV. STAT. §§ 8-6-101 *et seq*. Cushman assumes, for purposes of this Motion, that Bursey is alleging claims under both the Wage Claim Act and the Minimum Wage Act.

Order (the "Wage Order"), promulgate minimum wage and overtime pay requirements *only with respect to employers in four specific industries*.  Bursey alleges that Cushman is a Commercial Support Services company – one of the four covered industries.  However, the undisputed material facts show that Cushman provides to other commercial firms sophisticated real estate services, not the type of low-skilled services that are the hallmark of the Commercial Support Services industry.  Therefore, Cushman is not covered by the Wage Order (or the underlying Wage Claim Act and Minimum Wage Act).

Additionally, even if Cushman were covered by the Wage Order (it is not), Bursey's claim that Cushman failed to pay minimum wages is fatally flawed because: (i) it is based on an alleged underlying legal "requirement" that does not exist – specifically, that minimum wages must be paid "free and clear," and (ii) it is undisputed that Bursey was compensated well in excess of the minimum wage, earning $103,846.20 in compensation, paid in equal bi-weekly payments, for his approximately 54 weeks of work at Cushman.  For these reasons, the Court should grant summary judgment in favor of Cushman on Plaintiff's Colorado state law claims (Counts III and IV).

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Bursey was employed by Defendant Cushman & Wakefield of Colorado, Inc. as an Appraiser from March 26, 2018 until his resignation, effective April 12, 2019.  Declaration of James Moran ("Moran Decl.") ¶ 7.

2.     Bursey executed an Employment Agreement on April 16, 2018 ("Employment Agreement"), which specified that he would receive a guaranteed draw at the rate of $100,000 per year ("Draw"), payable in bi-weekly installments of $3,846.15, less standard withholdings.  Moran Decl. ¶ 8; **Exhibit A**.

3. During his employment from March 26, 2018 to April 12, 2019, Bursey was paid those equal, bi-weekly installments, which totaled $103,846.20.  Moran Decl. ¶ 9; **Exhibit B**.

4. Cushman & Wakefield, Inc. is a global real estate services firm that offers a wide range of commercial real estate services, including property, facilities and project management, leasing, capital markets, brokerage, and V&A services.  Moran Decl. ¶ 3.

5. Cushman & Wakefield of Colorado, Inc. is a wholly owned subsidiary of Cushman & Wakefield, Inc., which offers the same.  Moran Decl. ¶ 4.

6. Cushman's V&A line of business provides commercial property valuations to guide its clients' investment, equity, and debt decisions.  Moran Decl. ¶ 5; *see also* Compl. ¶ 25.

7. Employees in Cushman's V&A line of business, including junior appraisers, appraisers, and senior appraisers (collectively, "Appraisers"), are experienced in areas of commercial real estate appraisal management and administration including the bidding, preparation, and reviewing of commercial appraisal reports, third-party appraiser selection, compliance and risk analysis, commercial property inspection, dispute analysis, portfolio valuation, and property tax and financial reporting advice and management.  Moran Decl. ¶ 6.

8. Cushman's Appraisers (including Bursey, while he was employed by Cushman & Wakefield of Colorado, Inc.) develop and produce commercial appraisals.  Moran Decl. ¶ 11.

9. A single commercial appraisal can cost thousands of dollars and reflects hours of financial research and analysis.  Moran Decl. ¶ 12.

10. Appraisers' job duties include providing analysis and opinions about the value of commercial property for a variety of clients and intended users, performing market research, writing reports, and creating financial models.  Moran Decl. ¶ 13.

11. When hiring Appraisers, Cushman seeks applicants with, at a minimum, bachelor's degrees, preferably in business, finance, real estate or economics, and experience in the real estate appraisal industry. Moran Decl. ¶ 14.

12. Cushman does not perform or provide any of the following services for other commercial firms: clerical, keypunching, janitorial, laundry or dry cleaning, security, parking attendants, equipment operations, landscaping, and grounds maintenance. Moran Decl. ¶ 17.

13. The companies with which Cushman contracts do not have the capability of performing the services that Cushman provides utilizing their own employees, as the tasks that Cushman performs require specialized skills and training and are not part of its clients' day-to-day operations, such as clerical, janitorial, or security work. Moran Decl. ¶ 18.

14. The only deductions Cushman made from Bursey's compensation were for federal and state taxes and benefits such as medical insurance premiums. Moran Decl. ¶¶ 9-10; **Exhibit B**.

### III.   STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the non-moving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

there is no genuine issue for trial," and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

## IV. ARGUMENTS AND AUTHORITIES

In Counts III and IV of his Complaint, Bursey alleges that Cushman failed to pay minimum wages and overtime in violation of Colorado law. However, the relevant Colorado statutes cover employers in only four industries, none of which encompass Cushman's business operations. Therefore, Cushman need not comply with – and as a matter of law, cannot be found in violation of – these statutes. In Count IV, Bursey also alleges that Cushman failed to pay the minimum wage required by Colorado law because Cushman retained the right to seek reimbursement of negative Draw balances and he thus alleges that Cushman does not pay minimum wages "free and clear." But Colorado law does not require minimum wages be paid "free and clear," and it is undisputed that Bursey was compensated well in excess of the Colorado minimum wage during the entire period of his employment with Cushman.

### A. CUSHMAN'S MOTION IS TIMELY

As a threshold matter, the Court can and should consider the instant Motion at this early stage of litigation. Indeed, doing so would further the important interest in judicial efficiency. It is well established that "the paramount purpose of summary judgment is to expedite litigation by avoiding needless trials where no genuine issue exists as to any material fact and the movant is entitled to judgment as a matter of law." *Dubois v. Myers*, 684 P.2d 940 (D. Colo. 1984). Moreover, summary judgment serves the important function of "curbing the danger that the threat of such [frivolous] litigation will be used to harass or to coerce a settlement." *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.D.C. 1966) (citation omitted). In light of these considerations,

...

litigants are permitted to move for summary judgment at "*any time* until 30 days after the close of all discovery." FED. R. CIV. P. 56(b) (emphasis added). The Tenth Circuit has explicitly endorsed this approach. *See Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1518 (10th Cir. 1994) ("[T]here is no requirement in Rule 56 . . . that summary judgment not be entered until discovery is complete.") (citation and quotation omitted). Stated otherwise, litigants need not expend time and money defending frivolous claims as a precursor to moving for summary judgment.

Applying these axiomatic principles, courts in this judicial district have considered motions for summary judgment dealing with threshold questions of law well before the discovery cutoff. For instance, in *Blanco v. Xtreme Drilling & Coil Servs., Inc.*, No. 16-cv-00249-PAB-CBS, 2017 WL 951150, at *2 (D. Colo. Mar. 8, 2017), Judge Brimmer granted defendant's motion for partial summary judgment *on this exact legal issue* – finding that the defendant was not subject to the Wage Order because it was not in the Commercial Support Service industry – which motion for partial summary judgment was filed approximately three months after the case was initiated. *See id.*, ECF No. 1 (2/2/2016 Complaint); ECF No. 17 (5/9/2016 Motion for Partial Summary Judgment). Cushman's Motion, which mirrors the motion granted in *Blanco*, is therefore timely.

**B. CUSHMAN IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS III AND IV BECAUSE THE COMPANY IS NOT COVERED BY THE COLORADO MINIMUM WAGE ORDER**

In Counts III and IV, Bursey alleges that Cushman failed to pay overtime and minimum wages in violation of the Wage Claim Act and the Minimum Wage Act, as implemented by the Wage Order.[4] Compl. ¶¶ 95-97, 100-03. These claims fail as a matter of law. The Wage Order

---

[4]The Wage Orders in place at the time of Bursey's employment with Cushman were Wage Order Numbers 34 and 35, 7 COLO. CODE REGS. §§ 1103-1 *et seq*. Both the Wage Claim Act and the Minimum Wage Act are implemented by the same Wage Orders. While Wage Order Number 36

7

covers employers in only four industries. Cushman does not conduct business in any of those four industries and, therefore, cannot be found in violation of the Wage Order (or the underlying Wage Claim Act and Minimum Wage Act).

(a)     The Statutory Framework for Wage Claims under Colorado Law

The Colorado Department of Labor and Employment is authorized to promulgate Wage Orders each year, which implement the general provisions of the Wage Claim Act and the Minimum Wage Act. COLO. REV. STAT. Title 8, Articles 1, 4, 6, and 12; *see also* Colo. Const. art. XVIII § 15. The Wage Order establishes a minimum wage and regulates hours, working conditions, and procedures for certain employers and employees for work performed within the boundaries of the state of Colorado. Wage Order Numbers 34 and 35, 7 COLO. CODE REGS. § 1103-1:1. Neither the Wage Claim Act nor the Minimum Wage Act mandate the payment of overtime, establish a specific minimum wage, or prohibit deductions from employees' wages, and thus neither statute provides an independent basis for Bursey to seek relief. *See, e.g., Kazazian v. Vail Resorts, Inc.*, No. 18-CV-00197-MEH, 2018 WL 2445832, at *4 (D. Colo. May 31, 2018) ("Although Section 8-6-104 [of the Minimum Wage Act] provides that it is unlawful to employ workers at an inadequate wage, Colorado courts have interpreted this provision as merely a 'broad general statement of policy' establishing the necessity of a minimum wage, not as one creating a private right of action . . ."); *Cartier v. W. Elec. Coordinating Council*, No. 14-CV-0079-WJM-MJW, 2015 WL 3581346, at *5 (D. Colo. June 9, 2015) (because the Wage Order did not apply to

---

took effect on March 16, 2020, by its own terms, the Wage Order applies prospectively only. *See* 7 COLO. CODE REGS. § 1103-1:1 ("The effective date of COMPS Order # 36 is March 16, 2020."). Moreover, "[a]bsent legislative intent to the contrary, a statute is presumed to operate prospectively, meaning it operates on transactions occurring after its effective date." *In re Estate of DeWitt*, 54 P.3d 849, 854 (2002) (citation omitted).

the defendant, the plaintiff had no independent cause of action for unpaid overtime pursuant to the Wage Claim Act); *Samuels v. Feiner & Trinh Int'l, LLC*, No. 10-CV-02574-MEH, 2012 WL 3545275, at *2 (D. Colo. Aug. 15, 2012) (the Wage Claim Act "does not address overtime wages whatsoever," and thus does not provide a cause of action for failure to pay overtime wages).

For purposes of analyzing minimum wage and overtime claims in violation of Colorado law, the annual Wage Orders in effect during Bursey's employment guide the Court. *See Sobolewski v. Boselli & Sons, LLC*, 342 F. Supp. 3d 1178, 1182 (D. Colo. 2018) ("Plaintiff alleges violations of the Colorado Minimum Wage Act, C.R.S. § 8-6-101 *et seq.*, and the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et. seq.* These two acts are implemented by Colorado Minimum Wage Orders.").

(b)   Covered Employers under the Wage Orders

As noted, the Wage Orders in place at the time of Bursey's employment by Cushman applied to certain work performed within the boundaries of the state of Colorado in only four industries. Wage Order Nos. 34 and 35; 7 COLO. CODE REGS. § 1103-1:1. The four specifically defined "industries" under the relevant Wage Order are: (A) Retail and Service, (B) Commercial Support Service, (C) Food and Beverage, and (D) Health and Medical. *Id.* "The interpretation and application of the Colorado Minimum Wage Order is a matter of Colorado law." *Deherrera v. Decker Truck Line, Inc.*, No. 13-CV-02556-RM-KLM, 2015 WL 3619371, at *4 (D. Colo. June 10, 2015).

The Wage Order does not specify whether employees, like Bursey, who provide sophisticated commercial real estate services operate in any of the four enumerated industries covered by the Wage Order. The Court must therefore look "to the plain meaning of the language

9

used, considered within the context of the [Wage Order] as a whole." *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1143 (10th Cir. 2011) *abrogated on other grounds by Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014) (quoting *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010)). If the language is ambiguous, the Court must "look beyond that language for other evidence of legislative intent and purpose, such as legislative history or other rules of statutory construction." *Id.* at 1143-44 (quoting *Crandall v. City and Cty. of Denver*, 238 P.3d 659, 662 (D. Colo. 2010)).

Bursey alleges Cushman is in the Commercial Support Service industry. Compl. ¶ 15. The applicable Wage Order defines the Commercial Support Service industry as:

> Any business or enterprise engaged directly or indirectly in providing services to other commercial firms through the use of service employees **who perform duties such as: clerical, keypunching, janitorial, laundry or dry cleaning, security, building or plant maintenance, parking attendants, equipment operations, landscaping and grounds maintenance.** Commercial support service also includes temporary help firms which provide employees to any business or enterprise covered by this Wage Order. Any employee, including personnel, engaged in the performance of work connected with or incidental to such business or enterprise, is covered by the provisions of this Wage Order.

Wage Order Nos. 34 and 35; 7 COLO. CODE REGS. § 1103-1:2(B) (emphasis added).

Guided by this definition, Colorado courts have routinely found that professional services employers are not part of the Commercial Support Service industry. When analyzing whether the Wage Order applies to a particular employer, Colorado courts look to whether the employer's operations fit the industry definition, not whether any of the company's employees perform services that may be supplied in a particular industry. *Blanco*, No. 16-CV-00249-PAB-CBS, 2017 WL 951150, at *3 (citing *Salazar*, 644 F.3d at 1143-44). "One aspect common to all of the jobs or services listed in the Wage Order's definition of Commercial Support Service is that the employees perform **routine, everyday tasks** that larger employers often farm out to other

10

companies." *Id.* (emphasis added); *see also Cartier*, 2015 WL 3581346, at *5 ("Although the Court does not take the definition's list of specific occupations to be exclusive, the Court cannot ignore the common theme. All perform relatively low-skilled sorts of work that companies often 'farm out' to vendors."). In other words, Commercial Support Service employees perform tasks that could be performed by businesses using "in-house" labor but are instead outsourced to the support company. Employers that contract with other companies to provide discrete, specialized, and non-routine tasks do *not* operate within the Commercial Support Service industry, as defined by the Wage Order. *Id.*

Courts have rejected attempts by plaintiffs to expand the scope of the Wage Order beyond its enumerated industries. For instance, the court in *Cartier* granted summary judgment in favor of the defendant and dismissed the plaintiff's state law claim alleging a violation of the Wage Claim Act, as implemented by the Wage Order. *Id.* The defendant in *Cartier* was a non-profit corporation responsible for supervising and maintaining portions of the electrical power grid from western Canada to northern Baja California. *Id.* at *1. The court held that the plaintiff's Wage Claim Act claim failed because the Wage Order did not apply to the defendant. Like Cushman, the defendant in *Cartier* employed relatively high-skilled employees who did *not* perform "low-skilled sorts of work that companies often 'farm out' to vendors." *Id.*

      (c)    <u>Cushman Is Not a Covered Employer under the Wage Order</u>

The plain language of the Wage Order and prior decisions by Colorado courts interpreting the definition of the Commercial Support Service industry demonstrate that Cushman is not a Commercial Support Service company. Cushman is not in the business of providing services to other commercial firms through the use of low-skilled "service employees." Instead, Cushman

provides sophisticated commercial real estate services, including property, facilities and project management, as well as leasing, capital markets, brokerage, and valuation services. Moran Decl. ¶¶ 3-4.

Cushman does not provide to other commercial firms the type of "service employees" who fall under the Commercial Support Service definition, such as clerks, keypunchers, janitors, and landscapers. Moran Decl. ¶ 17. Cushman's Appraisers, for instance, offer expertise in all areas of appraisal management and administration including the bidding, preparation, and review of appraisal reports, third-party appraiser selection, compliance and risk analysis, property inspection, dispute analysis, portfolio valuation, and property tax and financial reporting advice and management. *Id.* ¶ 6. The commercial appraisals prepared and produced by Cushman are an extremely complex and specialized product. *Id.* ¶ 11. A single commercial appraisal can cost many thousands of dollars and reflects hours of in-depth financial research and analysis. *Id.* ¶ 12. The preparation of commercial appraisals requires specific training and the ability to make independent decisions after conducting detailed research and synthesizing data from many sources. *Id.* The companies with which Cushman contracts do not have the capability of performing the services that Cushman provides utilizing their own employees, as the tasks that Cushman performs require specialized skills and training and are not part of its clients' day-to-day operations, such as clerical, janitorial, or security work. *Id.* ¶ 18.

When hiring Appraisers like Bursey, Cushman seeks applicants with, at a minimum, bachelor's degrees, preferably in business, finance, real estate, or economics, and experience in the real estate appraisal industry. Moran Decl. ¶ 14. As an Appraiser, Bursey's job duties included providing objective and unbiased opinions about the value of real property for a variety of clients

and intended users, performing comprehensive and detailed market research, writing detailed reports, and creating complex financial models. *Id.* ¶ 13.

For these reasons, Cushman is not subject to the Wage Order, and the Court should grant summary judgment as to Counts III and IV of the Complaint.

**C.   CUSHMAN IS FURTHER ENTITLED TO SUMMARY JUDGMENT ON COUNT IV BECAUSE COLORADO LAW DOES NOT REQUIRE PAYMENT OF MINIMUM WAGES "FREE AND CLEAR" OF ANY DEDUCTIONS**

In Count IV, Bursey alleges that Cushman failed to pay him the minimum wage required by Colorado law because Cushman retained the right to seek reimbursement of his negative Draw balances and thus "do[es] not pay wages free and clear." Compl. ¶¶ 59-60, 102. Critically, Bursey does *not* allege that Cushman paid him less than the minimum rate of pay mandated by Colorado law. Instead, Bursey alleges only that Cushman violated the Wage Claim Act and the Minimum Wage Act by failing to "pay wages free and clear." *Id.* ¶ 102.

Bursey's minimum wage claim is based on a requirement that does not exist. No relevant Colorado law or regulation requires employers to pay minimum wages "free and clear" of any deductions – not the Wage Claim Act, the Minimum Wage Act, or the Wage Order. To the contrary, the Wage Claim Act expressly permits employers to make payroll deductions for "loans, advances, goods or services, and equipment or property provided by an employer to an employee pursuant to a written agreement between such employer and employee," provided such payroll deductions do not bring the employee's wages below the minimum wage applicable under the FLSA. COLO. REV. STAT. §§ 8-4-105(1)(b), 8-4-105(2). Similarly, the Minimum Wage Act provides generally that it is unlawful to pay employees "wages which are inadequate to supply the necessary cost of living and to maintain the health of the workers so employed" (as determined by

13

the applicable Wage Order) but contains no restrictions regarding wage deductions. COLO. REV. STAT. §§ 8-6-104, 8-6-106. Finally, rather than requiring the payment of wages "free and clear" from any deductions, the Wage Order requires only that employers pay wages equal to or in excess of the statutory minimum wage: $10.20 per hour in 2018 and $11.10 per hour in 2019 (the years during which Bursey was employed by Cushman). Wage Order Nos. 34 and 35; 7 COLO. CODE REGS. § 1103-1:3.[5]

Further, even if Bursey could make a cognizable legal claim that Cushman is covered by the Wage Order that established the relevant Colorado minimum wage (he cannot) and that Colorado law requires that minimum wages be paid "free and clear" (it does not), Bursey's minimum wage claim is further factually flawed. Bursey's compensation *significantly* exceeded Colorado's then-minimum wage of $10.20 per hour in 2018 and $11.10 per hour in 2019. During his employment from March 26, 2018 to April 12, 2019, Cushman paid Bursey compensation totaling $103,846.20, in equal bi-weekly payments of $3,846.15. Moran Decl. ¶ 9, **Exhibit B**. Even if Bursey worked 24 hours a day, 365 days a year, without a single minute off to rest, sleep, or eat, Bursey's hourly rate of pay would be $11.41, a rate *exceeding* Colorado's minimum wage requirements during his employment.

For these reasons, Bursey's claim that Cushman failed to pay the minimum wage prescribed by the Wage Claim Act and the Minimum Wage Act fails as it is legally and factually

---

[5] Bursey's Employment Agreement states that "in no event shall [Bursey] receive less in compensation than the Draw [$100,000] and no reductions will be made to the Draw because of the quantity or quality of work." Moran Decl., ¶¶ 8, 15; Exhibit A. Cushman complied with this requirement. *Id.* ¶¶ 9-10, 15-16; Exhibit B.

flawed. These fatal flaws provide a separate, independent basis for the Court to grant summary judgment in favor of Cushman on Count IV of Bursey's Complaint.

## V.     CONCLUSION

Bursey's Colorado law claims against Cushman fail for myriad reasons. Cushman's business is not covered by the Colorado statutes Bursey alleges it violated. Plainly, then, Cushman need not comply with – and as a matter of law, cannot be found in violation of – those statutes. Additionally, Bursey's claim that Cushman failed to pay minimum wages is based on a non-existent legal requirement, and it is further belied by the undisputed fact that he was compensated well in excess of Colorado's minimum wage. Bursey's Colorado law claims against Cushman are baseless and should be dismissed with prejudice.

WHEREFORE, Cushman respectfully requests this Court enter an order: (1) granting summary judgment in their favor on Plaintiff's Counts III and IV; (2) dismissing Counts III and IV with prejudice; and (3) granting such other relief as the Court deems appropriate.

Dated: April 17, 2020

Respectfully submitted,

By: */s/ Sadina Montani*

Thomas W. Snyder
Kutak Rock LLP
1801 California Street, Suite 3000
Denver, CO 80202-2626
T: +1 303 292 7884
F: +1 303 292 7799
thomas.snyder@kutakrock.com

Sadina Montani
Vedder Price P.C.
1401 I Street NW, Suite 1100
Washington, DC 20005
T: +1 202 312 3320
F: +1 202 312 3322
smontani@vedderprice.com

Thomas A. Petrides
Vedder Price (CA), LLP
1925 Century Park East, Suite 1900
Los Angeles, CA 90067
T: +1 424 204 7756
F: +1 424 204 7702
tpetrides@vedderprice.com

*Attorneys for Defendants*
*Cushman & Wakefield, Inc. and*
*Cushman & Wakefield of Colorado, Inc.*

**CERTIFICATE OF SERVICE**

 I hereby certify that on this 17th day of April, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

 John Neuman
 Beatriz Sosa-Morris
 Sosa-Morris Neuman, Attorneys at Law
 5612 Chaucer Drive
 Houston, Texas 77005
 T: +1 281 885 8630
 F: +1 281 885 8813
 jneuman@smnlawfirm.com
 bsosamorris@smnlawfirm.com
 *Attorneys for Plaintiff*

               /s/ Sadina Montani
               Vedder Price P.C.
               1401 I Street NW, Suite 1100
               Washington, DC 20005
               T: +1 202 312 3320
               F: +1 202 312 3322
               smontani@vedderprice.com

VP/#34774611.8