**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**DENVER DIVISION**

**CIVIL NO. 1:19-cv-02344-RBJ**

**PATRICK BURSEY, Individually and On Behalf of All Others Similarly Situated,**

**Plaintiff,**

**V.**

**CUSHMAN & WAKEFIELD, INC., and CUSHMAN & WAKEFIELD OF COLORADO, INC.,**

**Defendants.**

**UNOPPOSED MOTION FOR APPROVAL OF CLASS ACTION AND FLSA SETTLEMENT AND DISMISSAL OF LAWSUIT WITH PREJUDICE**

Plaintiff Patrick Bursey, Individually and on Behalf of All Others Similarly Situated ("Plaintiff") brings this unopposed Motion for Approval of a Colorado Wage Claim Act ("CWCA") Settlement on a class-wide basis and approval of a Fair Labor Standards Act ("FLSA") claim on behalf of Plaintiff Bursey pursuant to the terms of a Settlement Agreement and Release ("Agreement") entered into by Plaintiff and Cushman & Wakefield, Inc. and Cushman & Wakefield of Colorado, Inc. ("Defendants") (collectively, the "Parties"), and respectfully request the Court to approve the settlement and to Dismiss the Lawsuit with Prejudice.

### I. SUMMARY

The Parties have reached a settlement of Plaintiff's claims related to unpaid overtime under the FLSA, 29 U.S.C. 201 *et. seq.* and the CWCA, COLO. REV. STAT. § 8-4-101, *et seq.*, on behalf of all putative class members. This settlement provides certain appraisers who worked in

1

Colorado and provided services to Defendants with an opportunity to make a claim for unpaid overtime damages. This settlement was the result of arm's length negotiations conducted by experienced counsel for all parties through mediation and judicial assisted conferences, and after the exchange of necessary information. The terms of this settlement are reasonable, appropriate, and fair to all involved. Accordingly, the Parties ask the Court to approve this settlement and enter an Order dismissing this lawsuit.

## II.   BACKGROUND INFORMATION

This is an action brought by Plaintiff on behalf of himself and on behalf of all other similarly situated appraisers pursuant to the FLSA and CWCA. The lawsuit was filed on August 16, 2019. In the lawsuit, Plaintiff alleged that Defendants failed to comply with the FLSA by failing to pay him and/or other appraisers overtime compensation. Plaintiff sought the recovery of unpaid overtime compensation, liquidated damages, attorneys' fees, costs, and expenses, as well as such other and further relief to which Plaintiff and the purported class members might be entitled.

Defendants have at all times denied any liability or wrongdoing, and dispute Plaintiff's claims. However, Defendants have determined that in order to avoid the expenses and expenditures associated with continued litigation, it was in Defendants' best interest to resolve this lawsuit.

## III.   LEGAL STANDARD

"To approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Blocklin v. Black Pepper PHO, LLC,* Civil Action No. 14-cv-01252-WJM-KLM, 2014 U.S. Dist. LEXIS 167403,

2

at *3-4 (D. Colo. Nov. 14, 2014) (internal citations omitted).

"The Court must first determine whether the parties have provided sufficient information to determine whether a bona fide dispute exists. *Id.* (internal citations omitted). "The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement." *Id*. "Sufficient information regarding a bona fide dispute consists of the following: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Id*. (internal quotations omitted).

In determining whether a settlement is fair and equitable, the court considers "(1)whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id*. (internal citations omitted).

Finally, in determining a reasonable attorneys' fee, the court conducts a lodestar calculation. *Id*. at *8. "A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate." *Id. (citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The court reviews counsel's billing entries for billing judgment and may adjust the lodestar up or down to account for particularities of the work performed. *Id*. at *8-9. "Generally, the starting point for any calculation of a reasonable attorney's fee is the lodestar, that is, the number of hours reasonably expended multiplied by a reasonable

3

hourly rate. *Id*. at *10 (*citing Hensley*, 461 U.S. at 433 and *Malloy v. Monahan*, 73 F.3d 1012, 1017-18 (10th Cir. 1996). "The Court is not required to reach a lodestar determination in every instance, however, and may simply accept or reduce a fee request within its discretion." *Id*. (citing *Hensley*, 461 U.S. at 436-37).

## IV.   SETTLEMENT

The Parties now seek Court approval of their agreed settlement documents. The settlement represents a fair compromise of a bona fide dispute concerning the compensation practices at issue and the hours worked by Plaintiff and the putative class members. This settlement is not a mere compromise of guaranteed substantive rights under the FLSA or CWCA.

Prior to engaging in settlement discussions, the Parties independently and collectively thoroughly investigated the claims and defenses at issue. Additionally, the Parties conducted an in-depth analysis of the potential damages, including reviewing and processing payroll records and conducting witness interviews. These efforts provided all parties involved with great insight as to potential liability, the range of recovery at issue, and the risks of ongoing litigation. These efforts, coupled with the Parties' thorough preparation and familiarity with the facts and law surrounding Defendants' alleged failure to pay overtime compensation, allowed the Parties to intelligently, and in good faith, weigh both the risks and benefits of costly and time-consuming continued litigation. The Parties were also assisted by the Court in mediating this dispute. The Court conducted in person settlement discussions and continued settlement discussions via telephonic conferences until the Parties were able to reach a resolution.

The settlement was negotiated by attorneys who have experience prosecuting or defending this and similar claims. Both sides have had considerable experience prosecuting and/or defending and settling federal and state wage and hour claims previously, and, in this case, were particularly

well informed as to the facts and circumstances of the litigation.[1]  After the Parties reached an agreement on the settlement, the Parties engaged in extensive negotiations concerning the specific terms of the settlement, the notice program, and the scope of the release.  The settlement documents are the product of comprehensive discussion and negotiations.

The key details of the proposed settlement have been set forth in the Settlement and Agreement and Release which has been attached as Exhibit 1.  The terms of the settlement have been memorialized in a comprehensive settlement agreement.

### A. The Plaintiff's FLSA Claims

Plaintiff Bursey was hired by Defendants as an appraiser and performed commercial property valuations for the purpose of purchases and refinancing of loans.  Defendants compensated plaintiff and other appraisers on a purported recoverable draw system.   However, Plaintiff alleges that the draw was actually a loan which Defendants required that he repay.  Accordingly, Plaintiff alleges that on weeks when he was paid solely a draw, no actual wages were paid, because the money given was not "free and clear" but was required to be repaid.  *See* 29 C.F.R. § 531.35.  During Plaintiff's tenure with Defendants, he did not make more commissions than "draws" and accordingly, was left with an outstanding loan debt which Defendants sought collection on.  Plaintiff alleges that no exemption applies, because he was not paid a salary.  In fact, Plaintiff alleges he was not paid free and clear wages as required by the FLSA at all during the periods of time he was paid purely a draw.

---

[1] *Austin v. Pennsylvania Dep't of Corrs.,* 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 659 (D. Minn. 1974)("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Defendants deny these claims and assert that Plaintiff Bursey was at all times paid compensation equal to at least one-and one-half times the applicable minimum wage for every hour that he worked and he was exempt from overtime pursuant to the retail sales exemption of the FLSA. *See* 29 U.S.C.A. § 207(i). Specifically, Plaintiff was paid a draw against commission system that netted him wages in excess of one-and one-half times the applicable minimum wage, was employed by a service establishment and earned more than half of his earnings during various representative periods from commissions. Moreover, Defendants allege that not only do his wages constitute a salary, but his job duties exempt him from overtime pay as well. For example, Defendants allege that Plaintiff as a senior appraiser, supervised two or more full time employees and his work required significant independent judgment and discretion. Accordingly, Defendants allege that Plaintiff was properly exempt from overtime under the retail sales exemption, the administrative exemption, the executive exemption, and the highly compensated employee exemption.

Significantly, prior to this lawsuit being filed, two similar FLSA collective action lawsuits were filed against Cushman & Wakefield, Inc. and one of its subsidiaries as follows: *Ryan Seltz, et al. v. Cushman & Wakefield, Inc. and Cushman & Wakefield of Washington, DC., Inc.*, pending in the United States District Court for the District of Columbia, Case No. 1:18-cv-02092-BAH ("Seltz"); and *Dimitri Dixon, et al. v. Cushman & Wakefield Western, Inc.*, pending in the United States District Court for the Northern District of California, Case No. 3:18-cv-05813-JSC ("Dixon I") and its related action, *Dimitri Dixon, et al. v. Cushman & Wakefield, Inc.*, pending in the United States District Court for the Northern District of California, Case No 3:20-cv-07001-JSC ("Dixon II").

6

Plaintiff faced a genuine risk in continuing with his claim. The Court could find, in favor of Defendants, that Plaintiff was properly exempt from overtime pursuant to the retail sales exemption, the administrative exemption, the executive exemption, or the highly compensated employee exemption thereby negating any rights to overtime compensation. At the same time, the Court could find that Plaintiff's wages do not meet the requirements for any exemption claimed by Defendants and award Plaintiff all his damages plead.

Additionally, a settlement in the Seltz action or the Dixon II action could render the FLSA claims alleged in this lawsuit moot.

After a full review of the records and case law, the Parties balanced the risk of further litigation with the benefits of a resolution of this matter and the Parties made the decision to resolve these outstanding FLSA claims solely on behalf of Plaintiff Bursey, the only person who has opted-in to the FLSA lawsuit. In accordance with the settlement agreement executed by the Plaintiff, he is releasing his FLSA rights in exchange for the consideration listed therein. As no other putative Class Members have opted-in to this Lawsuit, their rights and claims under the FLSA will not be impacted by this settlement and they will each retain their right to pursue any FLSA claims they may have.

**B. Plaintiff and Class Members' Claims Under the Colorado Wage Claim Act**

Plaintiff alleges that Defendants also violated the Colorado Wage Claim Act and the Colorado Minimum Wage Act by failing to pay him and other appraisers' overtime and minimum wage. The putative class members consist of seven (7) other appraisers who were employed by Defendants during the three years prior to the filing of the Complaint and worked in the state of Colorado ("Colorado Class Members"). It is undisputed that Plaintiff was not paid overtime, but instead Defendants claimed that he was exempt. Plaintiff alleges that he and other appraisers are

7

not exempt from overtime pursuant to the CWCA. Moreover, Plaintiff alleges that because the wages of appraisers were not free and clear (instead Defendants required that draws be repaid even after termination), he and other appraisers were not paid any wages during the weeks they were paid a draw only. Accordingly, Plaintiff alleges this conduct violates the CWCA.

Defendants claim that they are not in an industry covered by the CWCA. Regardless, Defendants claim that they at all times paid Plaintiff and the Colorado Class Members wages in excess of the Colorado minimum wage. Given the risk to both sides associated with ongoing litigation, the Parties have decided to resolve these claims.

The settlement agreement outlines that the Colorado Class Members will be mailed a settlement notice along with a settlement check that includes language releasing their state law claims inserted above the signature line on the back of the checks. The Colorado Class Members will only be releasing their CWCA claims. They are free to assert their FLSA claims, if any, in a separate lawsuit or join any FLSA collective action against Defendants. Any Colorado Class Member that endorses and deposits a settlement check, will be subject to this Court's order dismissing their CWCA claims with prejudice.

### V.     EXPLANATION OF SETTLEMENT

The Parties have agreed to resolve these claims for a total sum of **$82,837.96 (the "Settlement Payment").** The Settlement Payment covers the damages for Plaintiff and the Colorado Class Members, attorneys' fees, and out-of-pocket litigation expenses. Plaintiff's counsel is requesting attorneys' fees in the amount of $42,000 and out-of-pocket litigation expenses in the amount of $3,629.74. The settlement amount for the payment allocation to Plaintiff and the Colorado Class Members is $37,208.22. All costs, fees, and expenses associated with the

8

litigation are intended to be covered by the Settlement Payment and no further payment will be owed to Plaintiff or the Colorado Class Members.

### A. Payment Allocation to Plaintiff and the Colorado Class Members

The payment allocation to Plaintiff and the Colorado Class Members was calculated by taking each individual's claim for alleged unpaid overtime using the pay records provided by Defendants and Plaintiff's estimates of hours worked. In this case, the compensation per week was undisputed. However, the parties compromised on 47.5 hours worked per week which equals 7.5 hours of overtime worked per week. Using the results from this analysis, Plaintiff's Counsel calculated the individual damages for each Colorado Class Member. Plaintiff's counsel then negotiated a settlement of these claims based on the risk associated with continued litigation of this case. Additionally, the Plaintiff is providing a complete release and a release of his FLSA claims along with the CWCA. Accordingly, his risk percentage is lower based on his FLSA claims.

The settlement amounts that will be received by the Colorado Class Members are sufficient considering the risk of success on those particular claims. The net settlement payment to be received by any Colorado Class Member who decides to participate in this settlement is approximately 20% of their calculated best day damages using a two year statute of limitations period and 47.5 hours per week. This reduction is appropriate given the uncertainty of the applicability of the CWCA to Defendants and the risk inherent with litigating the claims of the Colorado Class Members as a class, as discussed further in Section VI below. Furthermore, each Colorado Class Member will receive a summary of the settlement with their settlement checks so that they might make an informed decision regarding participation in this settlement. Should they decide to not participate, they would be free to file their own case under the CWCA (or the FLSA)

against the Defendants. That is, unlike a Rule 23 settlement that operates to settle the claims of absent class members, a waiver of claims will only happen under this settlement if a given Colorado Class Member affirmatively decides to participate in this settlement.

The settlement allocations will be distributed in one check to each Colorado Class Member, two checks to Plaintiff, and in one check to Plaintiff's counsel. All CWCA settlement payments will be reported to the IRS on a W-2 and represent payment for unpaid overtime. Plaintiff will have an additional check for liquidated damages. This settlement payment to Plaintiff will be reported to the IRS on a 1099.

### B. Notice of Settlement and Release of Claims

Under the terms of the Settlement Agreement, after the Court approves the settlement, Defendants' counsel will mail a notice of settlement to each Colorado Class Member along with a settlement check. The notice informs the Colorado Class Members of the nature of this lawsuit, the fact that this lawsuit has settled, and the steps a Colorado Class Member may take should he or she elect to participate in this settlement. Those Colorado Class Members desiring to participate in the settlement will need to endorse and deposit the settlement check included with the settlement notice. The Colorado Class Members will release their CWCA claims **ONLY**. All class members shall be made aware of their rights and the consequences of endorsing the settlement payment. The Colorado Class Members shall have a period of 120 days after the date of issuance to endorse and deposit their settlement checks. The release applicable to the Colorado Class Members is a limited release of Colorado State Law wage and hour claims. If they wish to file or join an FLSA lawsuit against Defendants, they may do so and this settlement would not foreclose on their right to do so or recover monetary compensation.

### C. The attorney fees requested are less than the current lodestar amount

The amount of attorneys' fees requested by herein are fair and reasonable. The FLSA states as follows:

> The court in such action **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a **reasonable attorney's fee** to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b) (emphasis added); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 U.S. Dist. LEXIS 181333, 2018 WL 5269828 *1 (W.D. Okla. Oct. 23, 2018). Although the fee is mandatory, the Court has discretion to determine the reasonableness of the amount requested. *See Olivo v. Crawford Chevrolet Inc.*, 526 Fed. App'x 852, 855 (10th Cir. 2013). In adjudicating an attorney's fee award, a court first calculates a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Mauricio v. Phillip Galyen, P.C.,* No.3:14-CV-64-L, 2016 W L 127 3337, at* 1 (N.D. Tex. Mar.30, 2016).[2] There is a **strong presumption of the reasonableness of the lodestar amount.** *Black v. Settlepou, P.C.,* 732 F.3d 492, 502 (5th Cir. 2013) (emphasis added). Here attorneys' fees were negotiated separately from the underlying settlement and are based on a lodestar calculation, not a percentage of the fund calculation.

### 1. The hourly rates used by Plaintiff's Counsel are reasonable.

The attorney fee requested herein is fair and reasonable. The hourly rates billed by Plaintiff's counsel are reasonable and appropriate for attorneys in the District of Colorado. Plaintiff's counsel's hourly rate is $400. Attorneys Mrs. Sosa-Morris and Mr. Neuman attached to this Motion declarations listing their FLSA experience and customary bill rates. *See* Exhibits

---

[2] *See also Blum v. Stenson*, 465 U.S. 886, 888 (1984) (defining base fee to be product of reasonable hours and reasonable rate); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (defining product of hours reasonably expended and reasonable hourly rates as "the most useful starting point"); *Brantley v. Surles*, 804 F.2d 321, 325 (5th Cir. 1986)(stating hours multiplied by rate to be normal basis for fee).

11

2-3 respectively. Attorney Sosa-Morris has been practicing for over 9 and a half years. *See* Exhibit 2 (Attorney Sosa-Morris' declaration). For over 8 years, Attorney Sosa-Morris has handled FLSA matters representing employees exclusively. *Id*. She attended South Texas College of Law, was a member of Law Review, and graduated magnum cum laude. *Id*. Attorney Sosa-Morris has argued before the Fifth Circuit on FLSA exemption issues, and prevailed on numerous conditional certification motions, on summary judgment liability, on motions regarding representative discovery in FLSA matters, on misclassification cases, and on off the clock claims. She has also settled millions of dollars in FLSA claims. *Id*. Attorney Sosa-Morris is the founding partner of Sosa-Morris Neuman, PLLC which was officially established in January of 2017. Given Attorney Sosa-Morris' educational background and FLSA experience, her requested rate of $400 is reasonable.

Attorney Neuman attended the University of Houston Law Center. *See* Exhibit 3, Declaration of Attorney Neuman. While in Law school he was an articles editor on the Houston Business and Tax Law Journal. *Id*. Attorney Neuman graduated magna cum laude in the top ten percent of his class and has been practicing over eight years, primarily in FLSA cases. *Id*. Attorney Neuman has handled numerous FLSA claims across the country. *Id*. Given Attorney Neuman's educational background and FLSA experience, his requested rate of $400 is reasonable.

Attorney Sosa-Morris and Attorney Neuman have been named class counsel in other FLSA collective action matters and have successfully advocate for FLSA plaintiffs throughout the country. *See* Exhibit 2 and Exhibit 3 (Declarations of Attorney Sosa-Morris and Neuman respectively). The handling of these numerous cases on a variety of subtopics in the FLSA has allowed them to gain knowledge regarding all aspects of the FLSA litigation including but not limited to issues regarding exemptions, calculation of overtime, waivers of FLSA rights, the tip

credit, arbitration, class waivers, misclassifications, representative discovery, representative testimony, Fed. R. Civ. P. 30(b)6 depositions, proper approval of FLSA settlements, FLSA damages, and FLSA appeals.

### 2. The hours billed by Plaintiff's counsel are reasonable.

Plaintiff provides herein contemporaneous billing entries for work performed in connection with this matter. *See* Exhibit 2 (billing entries). Plaintiff's counsel has exercised billing judgment by eliminating several entries regarding, numerous communications with each other regarding this matter, organizing documents in the case file, filing of documents via the Courts' ECF system, saving and filing documents. The hours recorded were reasonably expended in the pursuit of reaching a resolution in this case. Plaintiff's counsel did not include unproductive, excessive, or redundant hours in determining the appropriate amount of attorneys' fees. Lastly, throughout the litigation of this case, Plaintiff's counsel regularly met to discuss legal issues and case strategy, but only rarely recorded such time in their lodestar calculation. Plaintiff's counsel estimates that the lodestar submitted herein for review omits approximately **6 hours** of attorney time, cumulatively.[3] Therefore, Plaintiff's counsel submits that the fee requested is less than the total hours billed and is therefore fair and reasonable.

### VI. APPROVAL OF SETTLEMENT IS JUSTIFIED AND THE LAWSUIT SHOULD BE DISMISSED WITH PREJUDICE

The Parties are now seeking Court approval of the settlement for the Plaintiff Bursey's FLSA and CWCA claims and the Colorado Class Members' CWCA claims to the extent that they endorse and deposit their settlement checks.[4]

---

[3] This amounts to a write off of at least $2,400 in fees.
[4] *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *Camp v. The Progressive Corp., et al.,* 2004 WL 2149079 (E.D. La. 2004); *see also Evans v. Jeff D.,* 475 U.S. 717, 726-27

The Parties believe that the terms and conditions of this settlement are fair, reasonable, adequate, beneficial, and in the best interests of all parties. As noted above, this proposed settlement was reached following the exchange of information, data, and extensive negotiations. There is a bona fide dispute in this matter regarding whether Plaintiff and the Colorado Class Members are entitled to overtime compensation. Defendants maintain that as a matter of law Plaintiff is unable to maintain a cognizable state law claim because the Wage Claim Act and Minimum Wage Act, both of which are implemented by the Colorado Minimum Wage Order (the "Wage Order"), promulgate minimum wage and overtime pay requirements only with respect to employers in four specific industries. Plaintiff alleges that Defendants are Commercial Support Services company – one of the four covered industries. However, Defendants assert that they provide to other commercial firms sophisticated real estate services, not the type of low-skilled services that are the hallmark of the Commercial Support Services industry. Therefore, Defendants are not covered by the Wage Order (or the underlying Wage Claim Act and Minimum Wage Act). Moreover, even if Defendants were covered by the Wage Order, they maintain that Plaintiff and putative Class Members were paid in excess of the Colorado statutory minimum wage during the entire period of their employment.

Because of the various defenses asserted by Defendants and the possibility that Defendants may have successfully defeated or limited some or all of Plaintiff's CWCA state law claims, the Parties believe that the settlement represents a fair compromise of the claims. Moreover, given the financial uncertainty associated with continued litigation and the strong likelihood that absent a settlement, this case would have proceeded to trial, a compromise of the claims prevents all

---

(1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

parties from incurring the additional costs and delay associated with a trial and appeal. Finally, the attorneys' fees requested when crosschecked with the lodestar amount are fair and reasonable. For these reasons, the Parties request that their Settlement Agreement attached hereto as Exhibit 1 be approved.

## VII.   CONCLUSION

Therefore, the Parties request that the Court:

a. Approve this settlement, including all of the terms set forth in the Settlement Agreement; and

b. Sign the Proposed Order Approving the Settlement Agreement submitted concurrently herewith, and dismiss this lawsuit on the merits and with prejudice;

Respectfully submitted,

*By: /s/ Beatriz Sosa-Morris*
Beatriz-Sosa Morris
SOSA-MORRIS NEUMAN
ATTORNEYS AT LAW
BSosaMorris@smnlawfirm.com
Texas State Bar No. 24076154
5612 Chaucer Drive
Houston, Texas 77005
Telephone: (281) 885-8844
Facsimile: (281) 885-8813

LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS